UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA L. TOFT, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 2861 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Debra L. Toft filed a claim for disability insurance benefits ("DIB") with the Social

Security Administration, alleging that she had become disabled beginning February 6, 2002.

The Commissioner denied the claim and then denied Toft's request for reconsideration.  Toft

sought and received a hearing before an administrative law judge ("ALJ") pursuant to 20 C.F.R.

§ 404.914.  The ALJ denied the claim, and the Social Security Appeals Council denied Toft's

request for review of the ALJ's decision, making the ALJ's decision the final decision of the

Commissioner.  *See Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).  Toft timely filed

this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final

decision.  Before the court are the parties' cross-motions for summary judgment.  Docs. 14, 18.

For the following reasons, Toft's motion is granted and the Commissioner's motion is denied,

and the case is remanded to the Commissioner for further proceedings.

**Background**

The following facts are taken from the administrative record.

A.      **Factual Background**

Toft was 49 years old when the ALJ's decision was issued. She is single, 5'6" tall, and

weighs approximately 285 pounds. Toft holds a college degree in computer science and worked

as a systems analyst for eighteen years until she stopped working in February 2002. Toft attests

that her job required one hour of walking, one hour of standing, and seven hours of sitting each

day, and lifting up to 20 pounds at times and less than 10 pounds regularly. Toft asserts that she

can no longer work because of limitations related to depression, fibromyalgia, chronic sinusitis,

and irritable bowel syndrome ("IBS").

1.      **Evidence of Physical Ailments**

Toft began seeing Dr. Susan Shapiro for treatment in March 2001, at which point she was

found to have a small hiatal hernia and mild peptic duodenitis. Toft sought treatment at North

Shore Gastroenterology in April 2001, where Dr. Alan Shapiro, a gastroenterologist, concluded

that she was suffering from mild exacerbation of IBS and prescribed Panine. Toft continued

seeing Dr. Alan Shapiro for IBS symptoms on an annual or semiannual basis through January

2005.

In June 2001, Toft sought emergency room treatment at Glenbrook Hospital for

dizziness, weakness, and vomiting, and was diagnosed with dehydration. In July 2001, Dr.

Massarat Bala performed a physical examination, reporting grossly normal functioning in each

body system and essentially normal results on blood testing. He noted that Toft was taking

Relafen for fibromyalgia and Levsin for IBS.

Medical records from Dr. Susan Shapiro show that Toft was noted in September 2002 to

have trigger points on the left side. An MRI of Toft's left elbow in June 2002 revealed mild-to-

moderate osteoarthritis of the radiocapitallar and ulnotochlear joint spaces. X-rays in October 2004 showed that Toft had mild degenerative changes in both sacroiliac joints and mild spurring with facet arthritis in the mid-cervical region.

In February 2002, Dr. Susan Shapiro treated Toft for depression and fibromyalgia. Toft was prescribed Vicodin, Flexeril, Prevacid, Elavil, Klonopin, Relafen, Seroquel, and Prozac. On March 6, 2002, Toft was placed on a Medrol Dose Pak for pain. On March 20, 2002, she was sent for physical therapy in response to headaches, fibromyalgia pain, and swelling in her leg. In April 2002, Toft complained of increased pain and diffuse myalgias, and reported to her doctor that she could not concentrate or work while on her pain medications. In June 2002, she was prescribed Vicodin for arm pain, and her Seroquel prescription was increased to address sleeping problems.

In July 2005, Toft weighed 321 pounds and had been prescribed by Dr. Susan Shapiro Lexapro, Elavil, Klonopin, Trazodone, Seroquel, Neurontin, Ambien, and Nexium to treat her symptoms for fibromyalgia, depression, right leg edema, anxiety, insomnia, nausea, IBS, and gastroesophageal reflux disease ("GERD"). She sought emergency room treatment for nausea and body aches, and was diagnosed with dehydration and gastritis. Toft requested a renewal of her sleep medications in September 2005 and reported pain in her fingers in December 2005.

In January 2006, Toft underwent an independent internal medicine consultative examination performed by Dr. Barry Rapaport at the request of Disability Determination Services ("DDS"). Dr. Rapaport noted Toft's reports of having fibromyalgia, depression, and a history of frequent abdominal cramps, pain, and chronic sinusitis. The physical examination revealed normal blood pressure readings, normal range-of-motion in the cervical and

lumbosacral spine, hips, knees and elbows, and normal fine and gross motor skills bilaterally.

Dr. Rapaport noted that Toft was morbidly obese and had diffuse tenderness in her abdomen and

spine; he reported no specific trigger points, but noted that Toft claimed tenderness in "multiple

areas." Dr. Rapaport concluded that Toft's primary problem was morbid obesity, which he

believed contributed to her other symptoms, including fibromyalgia by history, depression,

probable arthritis in the form of degenerative joint disease of the weight-bearing joints, and

probable IBS.

During January, June, and October 2006, Toft sought treatment from Dr. Laura Zaacks, a

rheumatologist and pain management specialist, for fibromyalgia and generalized pain. Dr.

Zaacks reported multiple myofascial tender points, diagnosed fibromyalgia, left arm pain, and

possible inflammatory arthritis, and recommended use of Lyrica and Plaquenil. Dr. Zaacks

injected steroids into Toft's left knee in June 2006, though Toft later reported that the injection

helped for only about 30 days. Toft reported spasms in her neck and shoulders, and pain in her

left hip, and was taking as many as 12 medications on a daily basis.

## 2.    Evidence of Mental Ailments

Toft had two mental hospitalizations prior to 2001. On July 18, 2001, Toft was admitted

to Northwest Community Hospital and treated for suicidal depression. She was released on July

21, 2001, and diagnosed with recurrent major depression and a personality disorder. Dr. Richard

Abrams noted that Toft had a flat affect, monotone voice, little insight into her condition, and

poor eye contact, but was oriented to person, time, and place, displayed no deficiencies in

memory, calculation ability, or fund of knowledge, and had an above-average IQ. Dr. Abrams

prescribed Risperdal to address Toft's report of adverse side effects from Effexor.

-4-

On September 26, 2001, Toft again was admitted for psychiatric treatment of depression. She was given a Global Assessment of Functioning ("GAF") score of 30, which indicated an inability to function in almost all areas. Toft's GAF was 56 when she was discharged on November 26, 2001, indicating moderate symptoms and a need for medication therapy.

Dr. Rapaport's January 2006 evaluation revealed that Toft was oriented to person, place, and time, and that she had adequate calculation and judgment skills. In February 2006, a consulting psychologist for DDS assessed the severity of Toft's affective disorder, and concluded that she did not have an impairment that met the severity requirements of the governing Social Security regulations because the affective disorder caused no more than a mild restriction of her activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace, and had not caused any episodes of decompensation. A second DDS psychologist affirmed these findings in May 2006.

Dr. Leonard Carr, a psychiatrist, stated in an April 2006 Psychiatric Report that he had seen Toft approximately once every three months since about July 2001 for treatment of severe depression characterized by lack of energy and fibromyalgic pain. Dr. Carr reported that Toft had a flat affect and depressed mood, but traveled, read books, and participated in social events adequately. He reported normal thought process, adequate memory functioning, adequate calculation skills, and adequate judgment.

### B.    The Administrative Hearing

At the administrative hearing, Toft testified that she lived in a town house and paid for it with savings and township assistance. She has a driver's license and drives once every two weeks to the grocery store, and she walks with the assistance of a cane. Toft estimated that she

can walk three-quarters of a block. She loads and unloads the dishwasher, does laundry, and bathes and dresses herself. She reads about an hour per day, and naps between one and three times a day. She does not exercise and does not take her dog outside.

Toft testified that she received disability benefits three times prior to 2002. She testified that she left her systems analyst position after a 6-month period of disability, and that the job required meetings in different buildings, which required her to walk. Toft said that she could not return to any of her past work because she was in constant pain from head to foot. Specifically, she cited hand cramps that inhibit typing, arm and shoulder pain, an inability to sit for sustained periods of time, as well as exhaustion, headaches, and IBS spasms. In response to questioning about why she did not see Dr. Zaacks between October 2004 and January 2006, Toft explained that she did not have the funds to do so and was unaware that she could receive free treatment.

Toft primarily complained of fibromyalgia attacks, which she described as an intense pain that makes her sensitive to light and sound. She testified that she was taking medications for fibromyalgia, which helped her to sleep but did not help with the pain. She asserts that the medicine made her "a little wacky" and tired, both of which inhibited her work performance. Toft said that her condition worsened since she stopped working, and that she felt pain in her head, neck, shoulders, back, elbows, wrists, hands, hips, and upper legs and knees. She testified that she can stand for fifteen minutes, sit for an hour, and lift a gallon of milk, but that she spends most of her day lying on the couch.

Vocational Expert ("VE") William Newman also testified at the hearing. Vocational expert testimony helps to determine "whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used …." 20 C.F.R. § 404.1566(e). At a

hearing, a VE may "respon[d] to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

The VE reviewed Toft's written statements about her work duties and questioned her at the hearing. He testified that Toft's past work as a systems analyst was considered skilled, sedentary work in the United States Department of Labor's *Dictionary of Occupational Titles*. The VE testified that Toft could perform skilled, sedentary work, and therefore that she could perform her past work as a systems analyst as it is generally performed in the national economy. In response to a hypothetical question asked by the ALJ, the VE said that all potential work opportunities would be eliminated if Toft had to lie down all day.

### C. The Commissioner's Decision

The ALJ issued a decision finding that Toft was not disabled and was therefore not eligible for DIB. The ALJ followed the "five-step sequential evaluation process" for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). The five steps are as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments [in 20 C.F.R. § 404, subpart P, app. 1] that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to

determine whether the applicant can engage in other work. If the applicant
can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (internal quotation marks omitted); *see
also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). RFC "is defined as 'the most [the
claimant] can still do despite [his] limitations.'" *Weatherbee*, 649 F.3d at 569 n.2 (alterations in
original) (quoting 20 C.F.R. §§ 404.1545(a), 416.945(a)). "A finding of disability requires an
affirmative answer at either step three or step five. The claimant bears the burden of proof at
steps one through four, after which at step five the burden shifts to the Commissioner." *Briscoe
ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At the fifth step, the government
"must present evidence establishing that the claimant possesses the [RFC] to perform work that
exists in a significant quantity in the national economy." *Weatherbee*, 649 F.3d at 569 (footnote
omitted).

Here, the ALJ determined that Toft had engaged in "substantial gainful activity" (step
one); that Toft suffered from depression, GERD, IBS, morbid obesity, sinusitis, and right lateral
epicondylitis, at least one of which was a "severe impairment," and that she has also been
diagnosed as having probable fibromyalgia and arthritis (step two); and that none of these
impairments were listed or equal to a listing in 20 C.F.R. Part 404, Subpart P, App. 1 (step
three). Toft does not challenge the ALJ's rulings at any of these steps. As part of step four, the
ALJ determined that Toft "has the residual functional capacity [("RFC")] to lift and carry … up
to 10 pounds at a time, to sit up to 6 hours of an eight-hour workday, and to stand and walk up to
2 hours of an eight-hour workday," but that she "must avoid concentrated exposure to hazards
such as unprotected heights and moving machinery and may not climb ladders, ropes, or
scaffolds more than occasionally." Based on that RFC, the ALJ concluded that "morbid obesity

is [Toft's] primary medical problem and that [Toft] remains capable of performing at least a wide range of sedentary work on a sustained basis," and also that Toft was capable of performing her past relevant work as a systems analyst (step four).  With this finding, the ALJ found Toft not to be disabled and declared her ineligible for DIB.

## Discussion

A claimant is disabled under the Social Security Act if he or she is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant has the burden of showing that her impairments prevent her from performing prior employment and any other job generally available in the national economy.  42 U.S.C. § 423(d)(2)(A).  As noted above, because the Social Security Appeals Council declined to review the ALJ's decision that Toft was not disabled, the ALJ's decision became the Commissioner's final decision.

Section 405 of the Act authorizes judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g).  The court reviews the Commissioner's legal determinations *de novo* and the factual findings deferentially, affirming those findings so long as they are supported by substantial evidence.  *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; it "must be more than a scintilla but may be less than a preponderance."  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.

2007) (internal quotation marks omitted). If the reviewing court finds that the Commissioner's decision is not supported by substantial evidence, "a remand for further proceedings is [usually] the appropriate remedy." *Briscoe*, 425 F.3d at 355. Moreover, the court "cannot uphold an administrative decision that fails to mention highly pertinent evidence," *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), or a decision containing errors of law, *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

In addition to satisfying these standards, the Commissioner's opinion must build an "accurate and logical bridge from the evidence to [the] conclusion so that [the] reviewing court[] may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (internal quotation marks omitted); *accord Briscoe*, 425 F.3d at 351 ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (holding that the Commissioner must "articulate at some minimal level [his] analysis of the evidence to permit an informed review") (internal quotation marks omitted). To build a logical bridge, the Commissioner must "sufficiently articulate his assessment of the evidence to assure [the court] that he considered the important evidence and to enable [the court] to trace the path of his reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation marks omitted). The court "cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

-10-

Toft argues that the Commissioner's decision is error because: (1) the ALJ's RFC determination was not supported by substantial evidence; (2) the ALJ made an improper credibility determination; and (3) the ALJ erred in the step four determination by relying upon an answer that the VE gave to an inaccurate hypothetical question. Though these alleged errors tend to converge and overlap to some extent, the court addresses each in turn.

**A.     The RFC Determination**

The ALJ's opinion made the following RFC determination:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry (push/pull) up to 10 pounds at a time, to sit up to 6 hours of an eight-hour workday, and to stand and walk up to 2 hours of an eight-hour workday. However, the claimant must avoid concentrated exposure to hazards such as unprotected heights and moving machinery and may not climb ladders, ropes, or scaffolds more than occasionally.

To support this conclusion, the opinion recites the applicable standard for evaluating RFC, followed by two paragraphs summarizing the medical opinions regarding Toft's capacity for work. In the first paragraph, the opinion summarizes the conclusions of a DDS medical consultant, which largely align with the ALJ's RFC determination, and then notes that a second DDS physician affirmed those findings. The second paragraph summarizes the conclusions of Toft's treating physician, Dr. Zaacks, that Toft could stand no more than 15 minutes at a time and no more than 60 minutes in an 8-hour day, could sit for no more than 30 minutes at a time and no more than 120 minutes in an 8-hour day, and could not lift any amount of weight, was unable to bend or stoop, and was only occasionally able to raise either arm above her shoulder.

The opinion then proceeds to describe Toft's testimony, without pausing to indicate what weight was afforded to the doctors' competing RFC opinions. From the opinion's ultimate RFC

determination, it would appear that the ALJ credited the DDS physicians' opinions over Dr. Zaacks's. Generally, the ALJ must give "controlling weight" to the medical opinion of a treating physician "if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.'" *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Social Security regulations provide that "more weight should be given to the opinions of doctors who have (1) examined a claimant, (2) treated a claimant frequently and for an extended period of time, (3) specialized in treating the claimant's condition, (4) performed appropriate diagnostic tests on the claimant, [and] (5) offered opinions that are consistent with the objective medical evidence and the record as a whole." *Roddy*, 705 F.3d at 637 (citing 20 C.F.R. § 404.1527(c)(2)(i), (ii)). An ALJ must offer "good reasons" for discounting a treating physician's opinion. *Larson*, 615 F.3d at 749 (internal quotation marks omitted). Put another way, "[e]ven though the ALJ was not required to give Dr. [Zaacks's] opinion controlling weight, [the ALJ] was required to provide a sound explanation to reject it and instead adopt [the DDS physicians'] view." *Roddy*, 705 F.3d at 636 (citations omitted).

The ALJ's opinion in this case does not explicitly state that controlling weight is not being given to Dr. Zaacks's opinion, let alone provide a good explanation for why such weight was not given. This is significant, given that Dr. Zaacks's opinion has the indicia of opinions—she examined Toft, treated her for an extended period of time, was a specialist in treating Toft's condition, and her opinions were consistent with objective medical evidence—that are accorded greater weight under the regulations. *See Scott*, 647 F.3d at 740.

-12-

Nor does the ALJ's opinion indicate what weight, if any, was afforded Dr. Zaacks's opinion. *See Larson*, 615 F.3d at 751 ("Even if the ALJ had articulated good reasons for rejecting [the treating physician's] opinion, it still would have been necessary to determine what weight his opinion was due under the applicable regulations.") (citing 20 C.F.R. § 404.1527(c)(2)).

The Commissioner argues that the ALJ might justifiably have given less weight to Dr. Zaacks's opinion because her fibromyalgia diagnosis could be perceived as conclusory: Zaacks checked a box indicating fibromyalgia, but did not note specific trigger points that would corroborate such a diagnosis. The ALJ's opinion does reference this fact, albeit briefly: "I note that the medical records provided by [Toft's] treating physicians fail to identify the trigger points which are required to establish a diagnosis of fibromyalgia, and there is insufficient medical evidence to limit the claimant's residual functional capacity to less-than-sedentary." The trouble is that the opinion does not build an "accurate and logical bridge from the evidence [the treating physician's failure to identify trigger points] to [the] conclusion [that Toft does not have fibromyalgia] so that [the] reviewing court[] may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young*, 362 F.3d at 1002 (internal quotation marks omitted). Did the ALJ disbelieve that Toft suffers from fibromyalgia? Did the ALJ afford less weight to Dr. Zaacks's opinion because no specific trigger points were noted, and, if so, how much less weight? Or did the ALJ believe that Toft suffers from fibromyalgia, and credit Dr. Zaacks's opinion accordingly, but cite the lack of trigger points as a reason for finding Toft's subjective description of her pain to be exaggerated? Any of these might be logical inferences to be drawn from the fact that Dr. Zaacks's records do not indicate specific trigger points. But the opinion gives no insight into the ALJ's reasoning, and the court's review

-13-

is limited to the reasons and logical bridge articulated in the ALJ's decision, not the post-hoc rationale submitted in the Commissioner's brief. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Roddy*, 705 F.3d at 637; *Martinez v. Astrue*, 630 F.3d 693, 694 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (holding that "a persuasive brief [cannot] substitute for" the ALJ's deficient opinion); *Larson*, 615 F.3d at 749.

The opinion's RFC determination is deficient as well in failing to sufficiently consider the interaction of Toft's mental and physical problems. Toft's many impairments (depression, GERD, IBS, morbid obesity, sinusitis, right lateral epicondylitis, and probable fibromyalgia and arthritis), while each perhaps not totally disabling in itself, combined might be totally disabling, a possibility that the ALJ must consider. *Martinez*, 630 F.3d at 697-98, 698-99; *Parker*, 597 F.3d at 923. The opinion's engagement with the potential cumulative effect of Toft's impairments was perfunctory and did not reference any of Toft's specific impairments. The opinion notes that "an individual, such as the claimant, with both obesity and a number of physical impairments may experience a greater degree of limitation than might otherwise be expected from the impairments." But to recognize that this *may be* the case is not the same as engaging in a reviewable analysis of whether Toft's individual impairments, when considered together, sum to total disability. The opinion provides no insight into Toft's unique circumstances, and thus does not adequately explain whether the combined effect of her impairments aligns with its RFC determination, as Social Security regulations required it to do. *See* 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your

impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.").

Along these lines, while the ALJ's opinion recites some details of Toft's claimed mental impairments in outlining her medical history, it makes only passing mention of those impairments, including the effect of psychiatric medications, in its analysis. The RFC discussion lacks any significant reference to Toft's mental problems, despite the fact that the opinion lists "depression" first among Toft's impairments. On remand, the ALJ should take account of Toft's claimed mental limitations in determining her RFC, *see Hill v. Astrue*, 295 F. App'x 77, 83 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(c); *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008)), as well as considering those impairments in conjunction with Toft's claimed physical impairments and obesity.

All this requires that the case be remanded to the Commissioner for further review. The regulations provide that an "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Failure to provide such an adequate narrative discussion "is sufficient to warrant reversal of the ALJ's decision." *Briscoe*, 425 F.3d at 352. The ALJ's opinion does not "enable [the court] to trace the path of [its] reasoning" regarding the RFC determination, *Hickman*, 187 F.3d at 689 (internal quotation marks omitted), and thus fails to provide a logical bridge between the evidence and that determination. *See Scott*, 647 F.3d at 740 (finding no

-15-

logical bridge where the ALJ did not "explain how she reached her conclusions about Scott's physical abilities" in the face of conflicting medical evidence); *Craft*, 539 F.3d at 677-78 (finding no logical bridge "between the ALJ's recitation of [the claimant's] medical evidence and the" RFC finding, where the ALJ recited much of the evidence "without a determination of weight"). Precedent consistently holds that such decisions cannot stand. *See Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012); *Scott*, 647 F.3d at 740; *Martinez*, 630 F.3d at 697-99.

### B.     The Adverse Credibility Determination

Although the court's opinion can stop here, for purposes of remand Toft's two other challenges to the ALJ's opinion will be addressed as well. The opinion supported its decision to deny benefits by commenting adversely on Toft's credibility:

> After considering the evidence of record, I find that, while the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible, as the functional capacity assessment provided by the claimant's treating physician is not supported by the medical evidence of record. During most of the physical examinations which the claimant underwent, including strength and range-of-motion testing, she was found to be functioning within normal limits. In addition, I note that the medical records provided by her treating physician fail to identify the trigger points which are required to establish a diagnosis of fibromyalgia, and there is insufficient medical evidence to limit the claimant's residual functional capacity to less-then-sedentary.

An ALJ's credibility determination is "entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness." *Briscoe*, 425 F.3d at 354. A reviewing court may "overturn a credibility determination only if it is patently wrong," *Craft*, 539 F.3d at 678, or if the ALJ fails to "justif[y] her conclusions with reasons that are supported by the record." *Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010); *see also Villano v.*

*Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  To build the required logical bridge for a credibility

determination regarding pain, the ALJ must consider not only the objective medical evidence,

but also the claimant's daily activity; the duration, frequency, and intensity of pain; any

precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication;

and functional restrictions.  SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *accord Villano*,

556 F.3d at 562-63 (requiring an analysis of the factors listed in SSR 96-7p as part of building a

logical bridge for credibility determinations).  Moreover, "[u]nder Social Security Ruling 96-7p,

an ALJ's evaluation of a[n] applicant's credibility must be specific enough to make clear to [the

court] how much weight the ALJ gave to the applicant's testimony and the reasons for that

decision."  *Hill v. Astrue*, 295 F. App'x 77, 81 (7th Cir. 2008); *see also Terry v. Astrue*, 580 F.3d

471, 477 (7th Cir. 2009) ("[T]he ALJ must consider the claimant's level of pain, medication,

treatment, daily activities, and limitations, 20 C.F.R. § 404.1529(c), and must justify the

credibility finding with specific reasons supported by the record."); *Villano*, 556 F.3d at 562-63;

*Ribaudo v. Barnhart*, 458 F.3d 580, 584-85 (7th Cir. 2006); *Lopez ex rel. Lopez v. Barnhart*, 336

F.3d 535, 539-40 (7th Cir. 2003).

  The opinion's credibility finding does not satisfy these requirements.  The finding that

Toft's statements were "only partially credible" provides "no explanation of which of [Toft]'s

statements are not entirely credible or how credible or noncredible any of them are."  *Martinez*,

630 F.3d at 696; *see also Chase v. Astrue*, 458 F. App'x 553, 558 (7th Cir. 2012) (holding that

the ALJ's "fail[ure] to specify which statements are or are not credible … leaves us with no basis

to review" the ALJ's credibility and RFC determinations); *Parker*, 597 F.3d at 922 (ALJ's

statement that the claimant was "not entirely credible" "is not only boilerplate; it is meaningless

boilerplate" because it "yields no clue to what weight the trier of fact gave the testimony"). The

finding regarding the absence of verifiable medical evidence of pain falls short as well. As the

Seventh Circuit has held:

> We do not suggest that the absence of verifiable medical evidence of pain is
> an inadmissible consideration in a disability proceeding. In some cases,
> pain *does* have an objectively verifiable source, and if so the administrative
> law judge may certainly treat this as evidence that the claimant is disabled.
> And if the presence of objective indicators thus makes a claim more
> plausible, their absence makes it less so. It would be a mistake to say "there
> is no objective medical confirmation of the claimant's pain; therefore the
> claimant is not in pain." But it would be entirely sensible to say "there is no
> objective medical confirmation, and this reduces my estimate of the
> probability that the claim is true." The administrative law judge said the
> first, not the second.

*Parker*, 597 F.3d at 922-23. The same mistake, in essence, was made here. In finding Toft's

statements "only partially credible," the ALJ's opinion did not discuss likelihood of pain or any

of Toft's subjective accounts of the pain she experienced, but appears to have based its adverse

credibility finding on what it considered to be a lack of objective evidence of fibromyalgia.

Fibromyalgia is "a common, but elusive and mysterious … disease. Its cause or causes are

unknown, there is no cure, and of greatest importance to disability law, its symptoms are entirely

subjective." *Sarchet*, 78 F.3d at 306 (citations omitted). The opinion's observation that Toft

lacked the requisite number of "trigger points," while pertinent, does not adequately address the

subjective symptoms Toft described. *See Martinez*, 630 F.3d at 697 ("The etiology of pain is not

so well understood, or people's pain thresholds so uniform, that the severity of pain experienced

by a given individual can be 'read off' from a medical report.") (internal quotation marks

omitted). And as discussed above, the opinion does not explain what conclusions the ALJ drew

from the lack of verified trigger points. Toft's account of her pain, limitations, medication, and

daily activities could support a finding that she is severely limited by pain rooted in

fibromyalgia. The ALJ may reject Toft's subjective account, but to properly do so the ALJ must

provide cogent reasoning rather than simply noting a "lack of objective evidence."

## C.    The Hypothetical Questions to the VE

Finally, Toft challenges the ALJ's reliance at step four on answers the VE have to what

she believes were two improper hypothetical questions. The first hypothetical question was:

> [A]ssume on the basis of the record an individual who is 49 years old, has
> the work experience and education of this claimant and has the following
> exertional limitations: could sit six to eight hours out of the day, stand and
> walk at least six hours out of the day, assuming someone who can lift and
> carry frequently up to 10 pounds, occasionally up to 20 pounds. Further
> assuming someone who can only occasionally climb ladders, ropes and
> scaffolds, and must avoid concentrated exposure to any unprotected heights
> or moving and hazardous machinery, could such a person perform the
> claimant's past work?

The VE replied, "Yes." The ALJ then asked, "But if a person had to lie down during the day, I

assume there'd be no full-time jobs such a person could perform, is that correct?" The VE

replied, "Correct."

Because remand is being ordered on the two grounds set forth above, there is no need to

address whether the opinion's reliance on the answers to these questions, standing alone, would

itself warrant a remand. That said, the ALJ on remand should ensure that reliance is placed only

on responses to hypothetical questions that "include all impairments that are established by the

record and accepted by the ALJ as credible." *Parrott v. Astrue*, 493 F. App'x 801, 805 (7th Cir.

2012); *see Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

**Conclusion**

Because the ALJ did not build the required logical bridge from the evidence in the record to the opinion's determinations of Toft's RFC and credibility, the court need not (in fact, cannot) decide whether there is substantial evidence supporting the ALJ's denial of benefits. *See Chase*, 458 F. App'x at 558; *Scott*, 647 F.3d at 741. Accordingly, the court grants Toft's motion for summary judgment, denies the Commissioner's motion for summary judgment, and remands the case to the Commissioner for further review consistent with this opinion.

May 23, 2013

_____
United States District Judge